

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2020

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

  Re: *United States v. Jemfford Perez*, 19 Cr. 12 (VSB)

Dear Judge Broderick:

  The Government respectfully submits this letter in advance of sentencing in this matter, which is currently scheduled for May 1, 2020, at 3:00 P.M. For the reasons explained below, the Government submits that a sentence within the stipulated Guidelines range of 8 to 14 months' imprisonment (the "Stipulated Guidelines Range") would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

  **A. Factual Background**

  The defendant was part of a conspiracy commonly known as a "card cracking scheme," which spanned approximately two years. (Final Presentence Report dated Apr. 6, 2020 ("PSR") ¶ 19.) In brief, members of the conspiracy created or obtained forged or fraudulent checks; recruited third parties known as collusive accountholders to provide personal identification information and/or means of identification; deposited the forged or fraudulent checks into accounts held by the collusive accountholders; and then promptly withdrew funds or used funds from the accounts to purchase money orders before financial institutions discovered the checks were fraudulent. (*Id.* ¶¶ 19, 21.)

  The defendant's participation in this scheme included depositing checks and withdrawing or using funds that were available in the account. (*Id.* ¶ 34.) In particular, he attempted to deposit and then obtain through withdrawals approximately $43,070.00 in stolen funds.[1] (*Id.*) In the course of his participation in this scheme, the defendant obtained and used the personally

---

[1] The Government notes that, while the defendant appears to have submitted a written statement to Probation indicating that he "sent other people into a bank with checks [he] knew were false" and "[t]hey cashed the checks and we shared the money," (PSR ¶¶ 38–40), bank surveillance images show that the defendant himself also entered banks to conduct withdrawals, including through teller transactions.

identifying information ("PII") of others, such as names, bank account numbers, bank cards, bank account access codes, or signatures.  (*Id.*)  The defendant also used postings on social media to recruit other individuals to participate in the conspiracy.  For instance, during the course of the scheme, the defendant used his "_snipezz" Instagram account to post the following:



And the defendant also used social media and to brag about the fraudulent proceeds that he obtained from the scheme.  For example, the defendant posted numerous photographs on social media flaunting large amounts of cash, including the following:

 

On or about December 16, 2019, the defendant pled guilty, pursuant to a plea agreement, to Count One of the Indictment, which charged him with conspiracy to commit bank fraud, in

violation of Title 18, United States Code, Section 1349. (PSR ¶ 5.) Consistent with the stipulated Guidelines calculation in the parties' plea agreement, the U.S. Probation Office ("Probation") calculated a base offense level of 7. (*Id.* ¶ 42.) Pursuant to U.S.S.G. § 2B1.1(b)(1)(D), 6 levels are added because the loss amount was more than $40,000 and less than $95,000. (*Id.* ¶ 43.) Assuming a two-level reduction for acceptance of responsibility, the defendant's total offense level is 11. (*See id.* ¶¶ 49–50.) Based on his criminal history calculation in the parties' plea agreement, the defendant was assessed one criminal history point and therefore determined to be in Criminal History Category I. (*Id.* ¶ 6.)

Based on the above, the Stipulated Guidelines Range in this case is 8 to 14 months' imprisonment. (*See id.*) The PSR calculates the applicable Guidelines range as 10 to 16 months.[2] (*Id.* ¶ 90.)

### B. Discussion

#### 1. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they are not merely a "body of casual advice." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

---

[2] Probation calculated a higher applicable Guidelines range after adding two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d), because the defendant committed this offense while on a state term of probation from December 2016 to August 23, 2019. (PSR ¶ 92.) Thus, Probation determined that the defendant is in Criminal History Category II, rather than Criminal History Category I, as stipulated in the parties' plea agreement. (*Id.*)

>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

## 2. A Sentence Within the Stipulated Guidelines Range Is Reasonable

The Government respectfully submits that a sentence within the Stipulated Guidelines Range is sufficient, but not greater than necessary, to comply with the purposes of sentencing. The Section 3553(a) factors most applicable in this case include the nature and seriousness of the offense, the need to afford adequate deterrence to criminal conduct, and the need to promote respect for the law.

*First*, a sentence within the Stipulated Guidelines Range adequately reflects the seriousness of the defendant's conduct, would promote respect for the law, and would provide just punishment. The defendant participated in a large conspiracy that attempted to steal – and in fact obtained – large amounts of money by deceiving various financial institutions.[3] In order to effect that scheme, the defendant and his co-conspirators obtained and used PII of others. Such crimes are serious and damaging, particularly as PII is central to many aspects of modern life, while regrettably vulnerable to those willing to disregard the law and threaten the financial security of others.

Although the defendant did not obtain the most funds during the course of the scheme, he is among the most culpable of the defendants charged in this case. Not only did he deposit and withdraw fraudulent funds – conduct that is factored into his loss calculation for Guidelines purposes – but he also broadcasted, advertised, and boasted about his involvement in the criminal activity. He was proud of his criminal activity, showed little or no remorse, and attempted to recruit others to take part in the fraudulent conduct. A sentence within the Stipulated Guidelines Range thus reflects the seriousness of the defendant's offense.

*Second*, the need for specific and general deterrence, and the importance of promoting respect for the law, also support a sentence within the Stipulated Guidelines Range. As to general deterrence, the criminal activity the defendant engaged in is relatively easy to accomplish, yet can have serious ramifications for victims. An incarceratory sentence is necessary to deter others from taking part in such conduct, and would demonstrate that fraudulent conduct like this offense is not

---

[3] In his submission to the Court, the defendant claims that he "only received a small percentage of th[e] sum" actually obtained during these efforts. (ECF No. 227 at 5.) That the defendant views his crime as less personally profitable than it might have been is immaterial, as it in no way decreases the defendant's culpability or mitigates the harm to victims from whom the funds were stolen.

an opportunity for a lucrative windfall. A sentence within the Stipulated Guidelines Range would send a message to others that such schemes will have serious consequences.

As to specific deterrence, the need to protect the public from further crimes of this defendant calls for a sentence within the Stipulated Guidelines Range. As discussed above, the defendant's advertising function reflected pride in his criminal activity that should be considered from a specific deterrence standpoint. Furthermore, although relatively young, this is not the defendant's first criminal conviction. In 2016, the defendant was arrested for petit larceny after he and another individual "forcibly removed property" from another person "after meeting the victim via social media." (PSR ¶ 52.) During that encounter, the defendant "punched the victim in the face several times with a closed fist' and caused injuries to the victim. (*Id.*) And apart from this case, the defendant is currently being prosecuted for the criminal possession of a weapon in the second degree, after he was arrested in 2018 and found in possession of a loaded .22 caliber revolver. (*Id.* ¶ 57.) None of these interactions with the criminal justice system appear to have deterred the defendant from committing additional crimes. An incarceratory sentence is necessary to deter him from do so in the future.

*Third*, in light of the defendant's repeated disregard for the law and the criminal justice system, the need to promote respect for the law likewise supports a sentence within the Stipulated Guidelines Range. Since his arrest, the defendant has tested positive for marijuana, opiates, and/or oxycodone seven times. (*Id.* ¶ 74.) He has refused to participate in an outpatient drug treatment program. (*Id.* ¶ 77.) And he has declined to participate in educational programs while on pretrial release. (*Id.* ¶ 15.)

Moreover, after being released on bail the day of his arrest, on March 15, April 22, and June 24, 2019, this Court was compelled to hold three bail revocation hearings to address the defendant's non-compliance with location monitoring requirements. (*See id.* at 1–2 & ¶ 15.) On August 12, 2019, United States Magistrate Judge Henry B. Pitman ultimately revoked the defendant's bail following his continued non-compliance with location monitoring requirements, documentation of new drug use, and a brazen attempt to deceive Pretrial Services and circumvent the requirement that he submit to urinalysis. (*Id.*)

Even after his remand, however, the defendant has incurred additional sanctions for failing to comply with prison directives. (*Id.* ¶¶ 16–17.) The most concerning of those violations is a February 26, 2020, sanction for his possession of a deadly weapon, which appears to have been "a razor blade retrieved from his anus." (*Id.* ¶ 17.) Given the defendant's continued disdain for legal authority and his apparent penchant for acquiring dangerous weapons, an incarceratory sentence is necessary to promote respect for the law and ensure the safety of others.

In sum, a sentence within the Stipulated Guidelines Range would adequately balance the various considerations under Section 3553(a) and achieve the statute's stated objectives.

### 3. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 8 to 14 months' imprisonment, as such a

sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney
        Southern District of New York

By: */s/ Jarrod L. Schaeffer*
    Daniel G. Nessim
    Jarrod L. Schaeffer
    Assistant United States Attorneys
    Tel: (212) 637-2486 / 2270

cc:  Alan Nelson, Esq.